ROBINS DRY DOCK AND REPAIR COMPANY, Appellant
and Respondent, *v.* NAVIGAZIONE LIBERA TRIESTINA,
S. A., Respondent, and MORAN TOWING AND TRANS-
PORTATION COMPANY, INC., Appellant.

(Argued January 18, 1933; decided April 11, 1933.)

*Harold Harper* and *E. Curtis Rouse* for plaintiff, appellent and respondent. The plaintiff is entitled to judgment either against the defendant-appellant towing company or the defendant-respondent steamship company. (*S. & C. Clothing Co.* v. *United States Trucking Corp.*, 216 App. Div. 482; *Yatter* v. *Mathies*, 139 Misc. Rep. 26; *Hummerstone* v. *Leary* [1921] 2 K. B. 664; *Thermoid Rubber Co.* v. *Baird Rubber & Trading Co.*, 124 Misc. Rep. 774; *White* v. *Steam-Tug Lavergne*, 2 Fed. Rep. 788.) The judgment against the towing company was proper irrespective of the depositions. (*Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297; *The Steamer Webb*, 14 Wall. 406; *The Allegheny*, 252 Fed. Rep. 6; *The Clarence P. Howland*, 16 Fed. Rep. [2d] 25; *The Dorset*, 260 Fed. Rep. 32; *The John D. Rockefeller*, 272 Fed. Rep. 67; *Calzavaro* v. *Planet S. S. Corp.*, 31 Fed. Rep. [2d] 885; *Wilmington Ry. Bridge Co.* v. *Franco-Ottoman S. Co.*, 259 Fed. Rep. 166; *Elwood* v. *Western Union Tel. Co.*,

45 N. Y. 549; *Wohlfahrt* v. *Beckert*, 92 N. Y. 490; *Gaffney* v. *N. Y. Consolidated R. R. Co.*, 220 N. Y. 34.)

*Harold R. Medina, Richard F. Lenahan* and *William F. McNulty* for defendant-appellant. The admission into evidence of the incompetent depositions of the *Brenta's* captain and third mate constituted clear reversible error. (*Robins Dry Dock & Repair Co.* v. *Navigazione Libera Triestina*, 32 Fed. Rep. [2d] 209; *Syracuse Mortgage Corp.* v. *Kepler*, 122 Misc. Rep. 95.) In holding that the tugboat captain was responsible for the collision the trial court allowed itself to be influenced by such irrelevant considerations as the verdict of the jury in the action which the plaintiff had previously instituted against the *Brenta's* owner in the United States District Court. (*Hull* v. *Littauer*, 162 N. Y. 569; *Kelly* v. *Burroughs*, 102 N. Y. 93; *Lomer* v. *Meeker*, 25 N. Y. 361; *Robins Dry Dock & Repair Co.* v. *Navigazione Libera Triestina*, 32 Fed. Rep. [2d] 209; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *Ruppert* v. *Brooklyn H. R. R. Co.*, 154 N. Y. 90; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *The China*, 7 Wall. 53; *Jure* v. *United Fruit Co.*, 6 Fed. Rep. [2d] 6; *Charente S. S. Co.* v. *United States*, 12 Fed. Rep. [2d] 412.) Even though it were to be assumed that the tugboat captain did order the *Brenta's* engines " half speed ahead " the defendant-appellant would still not be liable for his negligence in this respect because the record establishes that at the time of the collision he was acting as the agent, not of the defendant-appellant, but of the vessel's owner. (*Casey* v. *Davis & Furber Machine Co.*, 209 N. Y. 24; *Higgins* v. *Western Union Tel. Co.*, 156 N. Y. 75; *Wyllie* v. *Palmer*, 137 N. Y. 248; *The China*, 7 Wall. 53; *Jure* v. *United Fruit Co.*, 6 Fed. Rep. [2d] 6; *Charante S. S. Co.* v. *United States*, 12 Fed. Rep. [2d] 412; *Robins Dry Dock & Repair Co.* v. *Navigazione Libera Triestina*, 32 Fed. Rep. [2d] 209; *The Barendrecht*, 9

Fed. Rep. [2d] 614; *Sun Oil Co.* v. *Dalzell Towing Co.*, 55 Fed. Rep. [2d] 63; *Foreign Transport & Mercantile Corp.* v. *Moran Towing & Transportation Co.*, 57 Fed. Rep. [2d] 143.)

*Homer L. Loomis* for defendant-respondent. The trial justice on the evidence was obliged to find that in so far as the collision was due to negligence such negligence was alone that of the defendant-appellant's pilot, whose version of the collision was unbelievable while that of the foreign witnesses was in entire keeping with the probabilities. (*Ramsdell Transp. Co.* v. *Compagnie Generale Transatlantique*, 63 Fed. Rep. 845; 182 U. S. 406.) Apart from any special assumption of liability to the plaintiff, the defendant-respondent is not answerable to it for the default of a tower supplying both pilotage and tugs. (*Wilmington Ry. Bridge Co.* v. *Franco-Ottoman S. Co.*, 259 Fed. Rep. 166; *Robins Dry Dock & Repair Co.* v. *Navigazione Libera Triestina*, 32 Fed. Rep. [2d] 209; *Calzavaro* v. *Planet S. S. Corp.*, 31 Fed. Rep. [2d] 885; *The Dorset*, 260 Fed. Rep. 32; *The John D. Rockefeller*, 272 Fed. Rep. 67; *Sturgis* v. *Boyer*, 24 How. [U. S.] 110; *The W. G. Mason*, 142 Fed. Rep. 913; *The Edward G. Murray*, 278 Fed. Rep. 895; *The Stella*, 278 Fed. Rep. 939; *United States* v. *Port of Portland*, 300 Fed. Rep. 724.) The agreement relied on by the defendant-appellant to support its appeal from the dock owner's judgment against it is not effective against the shipowner because it is not available to or enforceable by the dock owner and because it is in no event applicable to a case where, as here, the tower furnished the pilotage as well as the assisting tugs. (*Noonan* v. *Bradley*, 9 Wall. [U. S.] 394; *Gillett* v. *Bank of America*, 160 N. Y. 549; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187.) In any event the defendant-appellant's non-liability clause, was never effective between the shipowner and the tug owner, since the proofs wholly failed to show

a meeting of minds thereon. (*Robitzek & Bro.* v. *Davis*, 296 Fed. Rep. 107; *Calzàvaro* v. *Planet S. S. Corp.*, 31 Fed. Rep. [2d] 885; *Madan* v. *Sherard*, 73 N. Y. 329; *Bell* v. *Mills*, 78 App. Div. 42; *Neuman* v. *National Shoe & Leather Exchange*, 26 Misc. Rep. 388; *Los Angeles Investment Co.* v. *Home Sav. Bank*, 180 Cal. 601; *Blossom* v. *Dodd*, 43 N. Y. 264; *The Coamo*, 267 Fed. Rep. 686; *The W. S. Holbrook*, 294 Fed. Rep. 908; *Navigazione Generale Italiana* v. *Timmins*, 278 Fed. Rep. 895.)

CROUCH, J. The *Brenta II*, a single screw steamship of 8,845 tons, was on January 21, 1926, moored in a slip in the Erie Basin, bow in, alongside and parallel to the steamship *El Siglo*, which in turn lay alongside Pier No. 2. One hundred and fifty feet further in, the slip ended with the gate of plaintiff's graving dock. About two o'clock of that day, the *Brenta II* prepared to leave the harbor, and its agents called the defendant Moran Towing Company for two tugs and a pilot to undock it, stating that its steam was up. Accordingly, the tugs *Agnes Moran* and *C. P. Raymond* were dispatched to the ship, and on their arrival Healy, master of the *Agnes Moran*, went aboard and directed the maneuvers of the tugs and the *Brenta II* from its bridge up to the time of the collision. A line was passed from the starboard bow of the ship to the *Agnes Moran*, and another from its starboard quarter to the *C. P. Raymond*. The mooring lines were taken up and the engines of the *Brenta II* started ahead, the tugs at the same time pulling astern and to starboard, toward the middle of the slip. When the ship had gone about half the distance inshore, its engines were reversed to full speed astern. At about that time, however, the head line of the *Agnes Moran* parted. The full steam pressure of the engines astern and the remaining tug did not entirely overcome the headway forward, and

the bow of the ship came in contact with the gate of the graving dock, causing damage of $19,080.

Plaintiff brought a common-law action in the Federal court against the steamship company alone. A verdict for the defendant was reversed and a new trial granted by the Circuit Court of Appeals. (*Robins Dry Dock & Repair Co.* v. *Navigazione Libera Triestina, S. A.*, 32 Fed. Rep. [2d] 209.) On that trial the defendant put in no evidence but rested upon the plaintiff's case. In view of the decision, it became necessary for the defendant on a new trial to adduce certain testimony. Accordingly, the captain and the third mate of the *Brenta II* were brought from Italy to New York and their depositions taken *de bene esse*.

Before the new trial was had, however, plaintiff determined to sue the Moran Towing Company as well as the original defendant. It thereupon brought this action in the State court, framing its complaint under the provisions of section 213 of the Civil Practice Act. The action in Federal court was discontinued upon a stipulation that the depositions above referred to might be used by the original defendant as evidence in the State court action.

Trial of the action was had as a non-jury case. Judgment was directed in favor of the plaintiff against the Moran Towing Company, and the complaint was dismissed as to the owner of the ship. The court found as facts that the accident occurred in consequence of the negligent navigation of the ship by Healy, and that Healy was acting at the time as the agent of the towing company, and not of the ship's owner. The judgment was unanimously affirmed in the Appellate Division and the case is here by leave of this court.

The appellant Towing Company asserts: (1) That the finding of negligence by Healy rests solely upon the testimony of two interested witnesses whom it had no oppor-

tunity to cross-examine; and (2) that Healy in any event was, as matter of law, the agent of the ship and not the agent of the towing company.

(1) Upon the trial Healy, as a witness for the towing company, testified to facts which if believed exonerated him and placed the blame for the ship's forward movement upon the engine room crew of the ship. The ship's owner in its own behalf and against the plaintiff only, offered to read in evidence the depositions of the captain and the third mate of the ship, taken under the circumstances above recited. To this testimony the Moran Towing Company objected upon the ground that it had not been a party to the first action and that it had had no opportunity to cross-examine the witnesses. The court permitted the depositions to be read as offered, and stated that the testimony was received only with respect to the plaintiff's claim against the ship's owner, and would not be considered as against the Moran Towing Company. It may be conceded that it is not always easy for a trier of fact, whether judge or jury, to keep evidence in separate compartments. When it is said, however, that the solution of the dilemma presented here was unsatisfactory and artificial, the answer must be that the dilemma was neither new nor unusual and that it has always been solved as it was here. (Compare *Akely* v. *Kinnicutt*, 238 N. Y. 466, 475; *Crandall* v. *Leach & Co.*, 222 App. Div. 292; *Scully* v. *Scully*, 179 App. Div. 266.) In any event, we are unable to see that the towing company was prejudiced by the ruling. The trial court, for reasons stated in its opinion, discredited Healy's story, and perhaps found in its very improbability, evidence to the contrary. Beyond that, however, there was testimony by the captain of the tug *Raymond* that he " noticed the operator [who could have been none other than Healy] of the steamer *Brenta*, motion to the ship to go toward the gate of dry dock No. 1." There is no indication in the record that the

trial court was influenced by the testimony contained in the depositions, nor may we say that there was no other evidence to support the finding, unanimously affirmed, that Healy was negligent.

(2) The negligence - of Healy being established, the remaining question is to determine which of the two defendants must answer for it. As stated above, the Moran Towing Company received an order from the agents of the ship's owner, to send two tugs and a pilot to assist the ship away from the dock, the ship to do her own steaming. The *Agnes Moran* and the *C. P. Raymond* were the two tugs and Healy was the pilot sent in compliance with that order. The maneuver which the Moran Towing Company was asked to perform was merely to undock the vessel and turn its bow seaward. In performing that maneuver, the general rule is that the tower acts as an independent contractor, and is primarily liable for negligent injuries. (*Sturgis* v. *Boyer*, 24 How. [U..S.] 110; *The Dorset*, 260 Fed. Rep. 32; *The John D. Rockefeller*, 272 Fed. Rep. 67; *Calzavaro* v. *Planet S. S. Corp.*, 31 Fed. Rep. [2d] 885.)

Except for what is referred to in the case as the " pilotage clause," the general rule would apply. It appears that from time to time the Moran Towing Company circulated among those who were likely to call upon it for service, printed copies of a rate schedule. It may be taken as a fact that the general agent of the ship's owner had over a period of several years dealt with the Moran Towing Company on the basis of its current rate schedule. Included in each rate schedule was a provision which read as follows: " Pilotage. When the captain of any tug engaged in the services of towing a vessel which is making use of her own propelling power goes on board said vessel, it is understood and agreed that said tugboat captain becomes the servant of the owners in respect to the giving of orders to any of the tugs engaged in

the towage service and in respect to the handling of such vessel, and neither the tugs nor their owners or agents shall be liable for any damage resulting therefrom."

There is plenty of authority holding that the effect of this provision as between the parties to the contract, is to alter the incidence of liability and to fix it upon the ship's owner. It is analogous to an indemnity agreement or to an agreement securing exemption from liability for loss or damage caused by a party's own negligence. As such it has been held to be valid. (*Sun Oil Co.* v. *Dalzell Towing Co.*, 287 U. S. 291.) But also, as such, it has no validity as to third persons. (*Brewer* v. *New York, L. E. & W. R. R. Co.*, 124 N. Y. 59; *Texas & Pacific Ry. Co.* v. *Watson*, 190 U. S. 287; *Coppock* v. *L. I. R. R. Co.*, 89 Hun, 186.) Something more, however, is claimed for it. Because it says that the " tugboat captain becomes the servant of the owners * * * in respect to the handling of such vessel," it is argued that such was in fact Healy's relation to the ship's owner, even when considered in the light of the surrounding facts and circumstances. We do not understand appellant to argue that in and of itself the clause was conclusive on plaintiff. That, of course, would not be so. A party may not shield himself from liability to a third person, merely by stipulating with another party that he is something which in reality he is not. (*Finegan* v. *Piercy Contracting Co.*, 189 App. Div. 699; *Buck* v. *Standard Oil Co.*, 224 App. Div. 299; affd., 249 N. Y. 595.) The question became one of fact and was so determined below; nor did the court in considering the question, lose sight of the contract itself, as appellant asserts. The description which the parties gave to their own relation was weighed against the facts, and the facts were found not to justify that description. We think the finding was right.

The judgment should be affirmed with costs to the

plaintiff against the defendant Moran Towing & Transportation Company, Inc., and with costs to defendant Navigazione Libera Triestina, S. A., as against the plaintiff.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.